UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Docket No.: 24-cr-10024-IT |
| ) | |
| ERIC MATHISON ) | |

## SENTENCING MEMORANDOM

This case arises out of the unlawful pattern and practice of certain Massachusetts State Police troopers assigned to the CDL unit to falsify records and issue passing scores to preferred applicants. Numerous friends and associates of certain troopers took advantage of their willingness to bend the rules, either receiving unearned CDLs themselves or arranging for others to do so. Eric Mathison was one such individual.

Mr. Mathison worked for a water delivery company doing business with the state police and developed a friendship with Sgt. Gary Cederquist. The water company regularly hired new drivers and arranged for their CDL tests. Mr. Mathison was tasked by his supervisor—who it so happens also was acquainted with Cederquist—with making such arrangements for new drivers hired by the water company. In doing so, Mr. Mathison and Cederquist carried out an arrangement whereby certain water company applicants would receive preferential treatment and passing scores. Mr. Mathison, in turn, provided Cederquist with a variety of drinks and excess inventory from the water company.

Mr. Mathison has acknowledged the wrongfulness of this conduct and entered a guilty plea. The Court must now determine what sentence is "sufficient, but not greater than necessary" to accomplish the purposes of sentencing under 18 U.S.C. § 3553. The Sentencing Guidelines recommend a sentence of between 24-30 months imprisonment.

However, the guidelines do not account for Mr. Mathison's relative culpability in a scheme not entirely of his making. Nor do they speak to his personal circumstances and role as the primary caretaker of two ailing parents. For these reasons, the defense respectfully submits that the Court would be warranted in imposing a non-custodial sentence.

Sentencing Guidelines

The court must "begin sentencing proceedings by correctly calculating the applicable Guideline range." Gall v. United States, 552 U.S. 38, 49 (2007). Mr. Mathison does not dispute the presentence report's calculation of the applicable guideline range. Under §2C1.1, the base offense level for this offense is 12. The offense level increases to 18 pursuant to §2C1.1(b)(3), because the offense involve a public official in a sensitive position. See §2C1.1 Application Note 4(B) (listing "law enforcement officer" as an example of a public official in a high-level decision-making position). After accounting for a three level reduction for timely acceptance of responsibility, Mr. Mathison's total offense level is 15. Because he falls in criminal history category III, the corresponding sentence range is 24-30 months imprisonment.

Mr. Mathison would note that his placement in criminal history category III occurs as a result of two convictions dating back to 2006 and 2007. While those offenses were serious and properly score for criminal history purposes under § 4A1.2, they nonetheless occurred 18-19 years ago. As will be explained below, Mr. Mathison rehabilitated himself in the wake of those convictions and his placement in criminal history category III may overstate the risk of recidivism he presents.

Mathison's Background and Personal Characteristics

Eric Mathison's background is ably captured in the presentence report. Born and raised in the same East Boston home where he still lives, Mr. Mathison had a difficult upbringing. His father drank and was physically and emotionally abusive during his childhood. As the eldest son, he bore the brunt of his father's rages. His parents and peers in the East Boston community were also conservative and intolerant, fostering a sense of alienation that caused him to rebel and act out as he came of age.

Starting as a teenager and continuing on into his twenties, Mr. Mathison amassed a criminal history for theft-related offenses, robbery, and impersonation of a police officer. He served several custodial sentences, culminating in an 8 year state prison sentence imposed in 2008. Mr. Mathison readily admits that he was reckless and irresponsible as a young man. Since that time, however, he has tried to learn from his mistakes and rehabilitate himself.

In 2014, he was released from custody. He was nearing middle age as a convicted felon. He had a high school education, no significant work history, savings, or assets. But he did possess a recognition that it was time to grow up, do things differently, and rebuild his life. He moved back home with his parents, who by this point were aging and needing assistance. He obtained a CDL and found work as a truck driver. Over the years that followed, he worked long hours in the trucking industry and worked his way up the ladder into management positions. In his current role, he earns a salary that is nearly six figures and also provides him with good benefits.

While not wealthy, Mr. Mathison is able to financially support both himself, his parents, and an adult younger brother who is on the autism spectrum. His parents no longer work and their only source of income is social security. His brother has a part-

3

time job at Logan Airport but does not have significant income.  Mr. Mathison is primarily responsible for the payment of the mortgage, utilities, and other household needs.  His also parents have serious medical conditions.  Mr. Mathison's father has congestive heart failure, chronic obstructive pulmonary disease (COPD), and diabetes severe enough to have resulted in a partial amputation on his left foot.  Mr. Mathison's mother also suffers from diabetes, high blood pressure, and dementia associated with early onset Alzheimer's disease.  Mr. Mathison serves as their primary caregiver, assisting with their medications, appointments, shopping, cooking, and other tasks of daily living.

The defense has submitted a thumb drive containing video footage of Mr. Mathison's family members discussing their medical conditions and their reliance on him.  Their statements are echoed by letters submitted by friends and neighbors attesting not only to Mr. Mathison's dedication to his parents, but his willingness to assist others in need of a helping hand.  Several highlight Mr. Mathison's regular practice of shoveling snow for elderly neighbors in the winter.  Others discuss his volunteer work in the community.  Notably, several of the authors are neighbors and family friends who have known him for decades and have witnessed his growth from a wayward youth into a responsible, productive member of the community.  As one, Jane Dean, put its: "Eric is a much different person today.  He turned his life around completely becoming someone I admire greatly."  *Jane Dean Letter*.

<u>Recommendation</u>

Eric Mathison respectfully requests that the Court sentence him to a lengthy period of probation in lieu of incarceration.  To the extent that the Court concludes a

more punitive sanction is needed, he would not object to a period of home detention enforced by electronic monitoring so long as he is able to maintain his employment. In the defense's view, such a sentence appropriately balances the sentencing factors enumerated in 18 U.S.C. § 3553(a).

One such consideration is the nature and circumstances of the offense. Mr. Mathison stands convicted of participating in a conspiracy with Sgt. Gary Cederquist whereby water company applicants received preferential treatment in CDL testing in return for Mr. Mathison's delivery of various drinks and water company inventory. To state the obvious, this arrangement was unlawful and wrong. Moreover, any offense involving corruption on the part of a law enforcement official is a serious one.

Importantly, though, the relationship between Sgt. Cederquist and Mr. Mathison did not occur in isolation and was not unique. Taken as a whole, this case exposed a whole culture of favor-doing and corruption within the state police's CDL unit, with Sgt. Cederquist at the center of it. The arrangement between Mr. Mathison and Sgt. Cederquist is but one of many examples whereby Sgt. Cederquist or other members of the CDL unit offered up preferential treatment to applicants with connections. Other recipients of Sgt. Cederquist's largesse included:

- Various state police troopers and employees;
- Various friends and associates of Sgt. Cederquist and other members of the CDL unit;
- a construction company owner who provided Cederquist with free landscaping, a new driveway, and a snowblower;

- a fence company owner who provided Cederquist with a granite post and mailbox.

Any serious exploration of the nature and circumstances of the offense in this case must necessarily include a weighing of the relevant culpability of its participants.

Eric Mathison did not create this culture of favor-doing within the CDL unit and his culpability is not simply equivalent to Sgt. Cederquist or the other members of the CDL unit. This is not to say that Mr. Mathison is without culpability; admittedly, he was content to go along with it. Still, a distinction must be drawn between those who benefitted from the favors being done and Mr. Mathison—whose participation in the scheme benefitted the water company, not him personally. This last point, in particular, bears repeating. Mr. Mathison got nothing out of this arrangement financially.

The applicable sentencing guideline (§2C1.1) does not meaningfully engage with notions of relative culpability. It provides for a 6 level upward adjustment due to the involvement of a public official in a sensitive position—ie, a law enforcement officer. But the specific offense characteristic does not otherwise attempt to assess the culpability of participants in a conspiracy of this kind. In other words, the guideline does not differentiate between the extorter and the extortee. Mr. Mathison submits that the sentence imposed should reflect his relative culpability vis a vis the other participants in the crime.

Beyond the nature and circumstances of the offense, the Court must also consider Mr. Mathison's personal history and characteristics. While he falls in criminal history category III, the underlying convictions date back to 2007 & 2008. For over a decade, Mr. Mathison has been in the community living an unassuming, productive life. He has

6

an excellent employment history and holds a good job.  When not working, he is usually home attending to the needs of his elderly parents.  They rely upon him both financially and for day-to-day care.  Their age and infirmities, and the absence of another responsible adult to take Mr. Mathison's place, amount to the sort of extraordinary family ties and responsibilities supporting a departure under §5H1.6 or, alternatively, a downward variance.

    The government argues that considerations of deterrence call for a sentence of imprisonment.  *Govt. Sentencing Memo* at 9-10.  As to individual deterrence, the government points mainly to Mr. Mathison's criminal history.  Without minimizing the seriousness of his history, it is now quite dated.  The information before the Court establishes that Mr. Mathison has matured and lived a law-abiding life for over 10 years.  Given Mr. Mathison's recent history, a sentence of incarceration is unnecessary to promote individual deterrence.

    General deterrence is another matter.  Undoubtedly there is a value to deterring the culture of favor-doing out of which this case arose.  But in doing so, the Court must be cognizant that many individuals, not merely Eric Mathison, sought or received preferential treatment from Sgt. Cederquist and his colleagues.  In order to deter similar conduct in the future, the defense would suggest those who most need to be deterred are law enforcement officers who would employ their official authority in pursuit of personal gain.

<u>Conclusion</u>

For all the foregoing reasons, Eric Mathison respectfully requests that the Court sentence him to a period of probation with such conditions or sanctions as the Court deems appropriate.

Respectfully submitted,

*/s/ Scott Lauer*
Scott Lauer
 B.B.O.: 667807
Assistant Federal Public Defender
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061

**CERTIFICATE OF SERVICE**

I hereby certify that this document and supporting exhibits filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 11, 2025.  A copy will also be provided via email to Senior U.S. Probation Officer Richard Rinaldi.

*/s/ Scott Lauer*
Scott Lauer